UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DOUGLAS BALSEWICZ,

              Plaintiff,

v.                                          Case No. 17-cv-1568-pp

PAUL KEMPER, LORA BLASIUS,
MS. VASQUEZ, SUE NYGREN,
A. HILTUNEN, LAURA FRAZIER,
BRENDA LABELLE, JAMES LABELLE,
and JOHN AND JANE DOES,

              Defendants.

---

**DECISION AND ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 3), DENYING AS MOOT PLAINTIFF'S MOTION TO USE FUNDS FROM RELEASE ACCOUNT (DKT. NO. 9) AND SCREENING THE COMPLAINT**

---

The plaintiff, who is representing himself, is a prisoner at Racine Correctional Institution (RCI). He filed this complaint, alleging that the defendants had violated his civil rights under 42 U.S.C. §1983. Dkt. No. 1. The plaintiff also has filed a motion for leave to proceed without prepayment of the filing fee, dkt. no. 2; a motion asking the court to appoint counsel, dkt. no. 3; and a motion to use funds from his release account to pay the filing fee., dkt. no. 9. This order resolves the plaintiff's motions and screens his complaint.

1

I. **Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2) and Motion to Use Funds from Release Account to Pay the Filing Fee (Dkt. No. 9)**

Because the plaintiff was incarcerated when he filed his complaint, the Prison Litigation Reform Act (PLRA) applies to this case. 28 U.S.C. §1915. The PLRA allows an incarcerated plaintiff to proceed with his lawsuit without prepaying the filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). On November 15, 2017, U.S. Magistrate Judge David E. Jones (the judge assigned to the case at that time) ordered the plaintiff to pay an initial partial filing fee of $35.08. Dkt. No. 8. About a week later, the court received a motion from the plaintiff, asking it to allow him to pay the filing fee with funds in his release account. Dkt. No. 9. He explained that he did not have $35.08 in his regular account, and that he would not have that much in the account by the deadline. Dkt. No. 9-1. Less than a week after that, the court received $400—the full filing fee, plus the civil administrative fee.

Because the plaintiff has paid the full $400 filing fee, his motion to proceed without prepayment of the filing fee and his motion to use funds in his release account to pay the filing fee are moot.

II. **Screening of the Plaintiff's Complaint**

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to

2

state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed on a claim that his civil rights were violated under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.  The Plaintiff's Allegations

The plaintiff explains that he has been incarcerated at RCI since July 24, 2012. Dkt. No. 1 at ¶14. He states that he suffers from "Cervical Radiculopathy, Degenerative Disc Disease (DDD) in his lumbar and Cervical Spondylosis with Myelopathy and radiculopathy, Myalgia Myositis." Id. He asserts that these conditions cause him severe pain that does not go away. Id.

The plaintiff explains that when he arrived at RCI, he was dealing with chronic back pain and had recently had ankle surgery. Id. at ¶15. He states that the surgeon had prescribed Tramadol for the pain, which he began receiving on August 23, 2012. Id. About a week later, he requested a refill of the medication, but defendant nurse practitioner Lora Blasius allegedly cancelled the order. Id. According to the plaintiff, after trying several times to contact Blasius about the cancellation, he reached out to defendant health services manager Sue Nygren, but she allegedly never responded. Id. at ¶16. The plaintiff indicates that he filed "several" inmate complaints about the issue; all of them were dismissed "for reasons unrelated to complaints." Id. at ¶17.

The plaintiff states that over the next couple of years, Blasius refused to prescribe adequate pain medication. Id. at ¶18. The plaintiff states that he continuously informed Blasius that the medication she prescribed did not relieve his pain. Id. The plaintiff states that Blasius often told him that, if he did not want to hurt, he should drink more water and lose weight. Id.

The plaintiff's complaint then jumps ahead two years to August 15, 2014. He alleges that at that time, he submitted a health service request form complaining about severe pain in his neck that ran down his shoulder and into his arm. Id. at ¶19. Someone (the plaintiff does not indicate who) told him he would need to see the physical therapist. Id. He followed up about two weeks later, and he was told that he had an appointment scheduled with Blasius. Id. The physical therapist informed the plaintiff that Blasius would have to refer him to physical therapy before he could be seen. Id.

4

Blasius must have referred the plaintiff to physical therapy, because he alleges that, after he started, his pain became much worse. Id. at ¶20. The plaintiff states that he told the nurse he needed to see Blasius again, which he did on December 3, 2014, four months after the plaintiff first complained about the severe pain in his neck. Id.

The plaintiff states that he pleaded with Blasius to help him with his neck pain "without luck," so he was then seen by Dr. Krembs (not a defendant), who prescribed him a low dose of Neurontin for the pain. Id. at ¶21.

The plaintiff's complaint then skips ahead a little more than nine months, to September 20, 2015. Id. at ¶22. The plaintiff states that he had an x-ray at the hospital that showed nothing wrong with his shoulder bones, but, because he continuously complained about the pain, he was once again seen by Dr. Krembs, who prescribed Tramadol and ordered an MRI. Id. The plaintiff states that, when his Tramadol ran out, Blasius prevented him from seeing Dr. Krembs (through the nursing staff, who told the plaintiff that they had done all they could do and that he'd have to wait to see Blasius), and allowed two of his pain medication prescriptions to run out. Id. The plaintiff states that the MRI showed he needed surgery for his shoulder, but that Blasius denied the plaintiff's requests for renewal of his pain medications and to see Dr. Krembs. Id. at ¶23. According to the plaintiff, Blasius told him that she was his care provider and only she could prescribe medication for the plaintiff's pain. Id. The plaintiff asserts that she forced him to suffer from severe pain. Id.

5

The plaintiff says that on December 10, 2015, the surgeon recommended that the plaintiff be sent to a pain management clinic, but, according to the plaintiff, Blasius delayed those appointments for six months and failed to give him any pain medication. Id. at ¶24. On December 16, 2015, the plaintiff's pain was so severe that a correctional officer allegedly called health services requesting that someone see the plaintiff. Id. The plaintiff states that he was seen later that day by two nurses (identified as Jane Does), who allegedly were confused over what medication or pain treatment measures the surgeon had ordered for the plaintiff. Id. The plaintiff's allegations are not entirely clear on this point, but it appears that the orders from Dr. Bake (who the court assumes was the surgeon) were not in his prison medical file. Id.

About two months later, in February 2016, the plaintiff went back to the hospital and received a shot. Id. at ¶25. The surgeon told the plaintiff that if the shot did not address his pain, he would need surgery. Id. The plaintiff alleges that Blasius disregarded the surgeon's prescription for pain medication and instead prescribed a mental health medication. Id. The plaintiff states that he told Blasius that the medication wasn't addressing his pain, but she continued to prescribe it despite serious side effects. Id.

When Blasius finally sent the plaintiff to the pain management clinic at the end of June 2016—six months after the surgeon initially recommended it—she refused to follow the clinic's doctor's prescription for pain medication. Id. at ¶26, 27. About a week later, the plaintiff states that he began to receive one of the pain medications, but, after he wrote to defendant health services manager

6

Kristen Vasquez to complain about Blasius, Blasius cancelled the pain medication and instead prescribed an antidepressant for mental/mood disorder. Id. at ¶27.

The plaintiff alleges that he wrote Vasquez and defendant Laura Frazier, another health services manager, on numerous occasions to report the lack of treatment for his pain and to report Blasius's actions, but neither of them intervened to help him. Id. at ¶29. The plaintiff also alleges that he contacted defendant warden Paul Kemper to inform him of the inadequate treatment he was receiving. Id. at ¶33. The plaintiff states that Kemper initially told him to talk to Vasquez, which the plaintiff did. Id. The plaintiff asserts that, after he talked to Vasquez and informed Kemper that she was not helping, Kemper did not respond. Id. Finally, the plaintiff also alleges that he filed "numerous" inmate complaints about Blasius, Vasquez, and Kemper, but defendants A. Hiltunen, Brenda LaBelle, and James LaBelle "tampered" with some of them and "purposely delayed" others so that they could reject the complaints as being untimely. Id. at ¶31.

The plaintiff alleges that throughout August 2016, Blasius continued to refuse him adequate pain medication and disregard other doctors' orders regarding the treatment of his pain. Id. at ¶34. He also alleges that nurses Amy Epping and Nutting either failed to address his complaints of pain or denied him access to his medication (the plaintiff does not name either of these nurses as defendants). Id. at ¶35, 37.

7

The plaintiff asks for money damages and injunctive relief. Id. at pp. 12-13.

B. The Court's Analysis

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). Id.

The court finds that, at this stage in the case, the plaintiff has alleged sufficient facts to allow him to proceed on a claim that defendant Blasius was deliberately indifferent to his serious medical needs when she ignored or failed to address his complaints of pain, disregarded pain medication prescriptions from other doctors, and/or persisted with treatment after the plaintiff informed her of its ineffectiveness. The court also will allow the plaintiff to proceed on a First Amendment retaliation claim against Blasius, based on his allegation that she cancelled a prescribed pain medication after he complained to her supervisor about her alleged misconduct. See Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010) (to state a claim of retaliation, a plaintiff must allege that he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two).

Finally, the court will allow the plaintiff to proceed against defendants Kemper, Vasquez, Nygren, Hiltunen, Frazier, B. LaBelle, and J. LaBelle based

on his allegations that, although they knew about Blasius's alleged misconduct and the lack of treatment for his pain, they either failed to intervene, or took action to ensure that his complaints would be deemed untimely. See Taylor v. Wexford Health Sources, Inc., Case No. 15-C-5190, 2016WL3227310, at *5 (N.D. Ill. June 13, 2016).

The court will not allow the plaintiff to proceed against John and Jane Does. The only allegations against the Does in the complaint are in connection with the plaintiff's visit to health services following his complaints of pain after surgery. Id. at ¶24. The plaintiff alleges that the two unidentified nurses saw him later in the day after he filed a health services request form and that they "were confused" about what medication he had been prescribed. Id. The plaintiff does not explain why they were confused, whether they resolved their confusion, or what they did or did not do to address his pain. The plaintiff's vague allegations are insufficient to for the court to infer that these defendants may have violated the plaintiff's constitutional rights. The court will dismiss the Does as defendants.

### III. Motion to Appoint Counsel

The plaintiff has asked the court to recruit counsel to represent him on a volunteer basis. Dkt. No. 3. The court may recruit counsel to represent a litigant who is unable to afford one in a civil case. Navejar v. Iyiola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). As one can imagine, the demand for volunteer attorneys is high (nearly every prisoner plaintiff asks for one), and

the supply is quite low. There are simply not enough attorneys willing or able to volunteer their time. As a result, the court must analyze each plaintiff's circumstances before determining whether it will recruit counsel in a particular case.

Because the plaintiff's efforts to hire counsel on his own were unsuccessful, the court must examine "whether the difficulty of the case—factually and legally—exceeds [his] capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt v. Mote, 503 F.3d 647, 655 (7th Cir. 2007)). This inquiry focuses on the plaintiff's ability to prosecute his case, including all of the "tasks that normally attend litigation" such as "evidence gathering" and "preparing and responding to motions." Id.

Based on the plaintiff's communications with the court, the court believes that he is capable of proceeding without the assistance of counsel through the briefing of summary judgment. This case is not complex: the plaintiff alleges that he complained continuously about his pain, but that none of the defendants did anything to help him (and that some actively intervened to keep him from getting help). This is a straightforward deliberate indifference claim, and the plaintiff has demonstrated that he is able to clearly communicate what happened to him and how it affected him.

Now that the court has determined that the plaintiff may proceed with his claims, it will order the defendants to respond to the complaint. Once the defendants file an answer, the court will enter a scheduling order setting deadlines for the parties to exchange information about the case (called the

"discovery" process) and, if appropriate, to file motions. During discovery, the plaintiff may ask the defendants written questions (interrogatories) and/or ask them to produce documents that he believes will support his claims. See Fed. R. Civ. Pro. 33 and 34. The plaintiff may not begin discovery, however, until after the court enters a scheduling order.

At this point, there is nothing for the plaintiff to do but wait for the defendants to respond to the complaint. As the case progresses, the legal and factual issues may become too complex for the plaintiff to handle on his own, but that time has not yet arrived. If circumstances change, the plaintiff may again raise his request and the court will consider it.

The court notes that the defendant has written to the court, asking why it has taken so long for the court to proceed with his case. The court does not have an excuse—only an explanation. This four-judge court has been short by one judge for almost two years, and the number of cases being filed has increased. The court has gotten behind on many of its cases, which it regrets. The court hopes that this order will begin moving the plaintiff's case forward.

## IV. Conclusion

The court **DENIES as moot** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES as moot** the plaintiff's motion to use funds from his release account to pay filing fees. Dkt. No. 9.

The court **DENIES without prejudice** the plaintiff's motion to appoint counsel. Dkt. No. 3.

The court **ORDERS** that defendants John and Jane Doe are **DISMISSED**.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, the clerk of court will send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Kemper, Blasius, Vasquez, Nygren, Hiltunen, Frazier, B. LaBelle and J. LaBelle.

The court also **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, defendants Kemper, Blasius, Vasquez, Nygren, Hiltunen, Frazier, B. LaBelle and J. LaBelle shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served

electronically through the court's electronic case filing system. The plaintiff should, however, keep a personal copy of each document filed with the court.

The court advises the plaintiff that if he does not file documents or take other court-ordered actions by the deadlines the court sets, the court may dismiss the case for failure to prosecute.

The parties shall notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 19th day of June, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**